for TexasüUrbanna. Royana M. v. Humana Health Plan of Texas U.S. Good morning, Your Honor. May it please the court and counsel. I'm a revolve on behalf of the plaintiff, Royana M. Discretionary clauses are unjust, encourage misrepresentation, and are deceptive because they mislead consumers regarding the terms of coverage. These are the words from the Texas Department of Insurance when they proposed and eventually adopted rules in 2010 and codified them in the Texas Administrative Code and Texas Insurance Code banning discretionary clauses in insurance policies issued in the state of Texas, which is why the most important issue in an issue of first impression in this circuit is how does the Texas law banning discretionary clauses in insurance policies affect the standard of review in ERISA cases? And the reason this is important is because the federal common law in the Fifth Circuit differs from what the state law has done. The state law has said that de novo review means de novo review of the facts and the law, and that to the extent that that differs with Fifth Circuit case law, this circuit needs to follow the state law on that ground. The reason for this. Where do you get in the state statute? It says there has to be de novo review. Where are you getting that from? Yes, Your Honor. It is found in two separate sections, the Chapter 28 of the Texas Administrative Code, 3.1202. It's also found in Chapter 1701.062 of the Texas Insurance Code, and what that is is the definition of a discretionary clause. But read me the language you're relying on to say there has to be de novo review. That's the issue under Texas law. Certainly. It says that a discretionary clause is one that purports or acts to bind a claimant to, or grant deference in subsequent proceedings to, adverse claims decisions or policy interpretations by the insurer or health maintenance organization. So the definition of a discretionary clause is given in the statutory language. But it's prohibiting those from being in a plan. It isn't telling courts what standard of review to apply, which is, right, that's the distinction before us. Well, Your Honor, I think it is. And the reason for that is. Do you have a case that says that? Not in this circuit. Right. There are cases in the. We're sort of an outlier here. Correct. And for a variety of historical reasons and other reasons as well. But there are two things that come into play here. The first is the federal common law and how it developed after the US Supreme Court in Firestone. And Firestone saying that de novo review is the default standard of review in ERISA cases. And as a result of that, the Fifth Circuit was one of the first circuits to deal with the issue of what de novo review really means. In coming to that decision, the Pierre case in 1991, this court said that de novo review means we distinguish between factual issues and legal issues. On legal issues, we give no deference to the decider, if you will. And we review that de novo. But on factual issues, the court said that we should defer to the plan administrator or the insurance company making the factual determinations because it's what's called a cold record. And on a cold record, the theory was that under trust law, you defer to the plan administrator because they defer deference on factual issues. That was the rationale for the Pierre decision. And since that time, eight other circuits have explicitly gone in the other direction, as this court is well aware. And this court is the only one that still relies on this distinction between factual and legal issues. The reason that's important is as the development of the scope of de novo review differed in different circuits, insurance companies and plan administrators created discretionary clauses in insurance policies and in plans. And the reason that became important was it effectively, by contract, it contracted away the de novo review of Firestone. And so in doing that, it led to an equal and opposing reaction. The National Association of Insurance Commissioners in 2002 passed a model rule, much like our restatements. And in that, it prohibited discretionary clauses in disability and health insurance policies. And the reason that's important is the states have followed that lead. In our circuit, just Texas, correct? Well, Your Honor, I'm referring at this moment to the state laws. I know, but under state law, we won't see this come up, this aspect, friction with Pierre in Louisiana or Mississippi. That is correct. So it's going to be, especially the post Glenn circumstance that you've got in this case is unique. It could only arise before us in Texas. That is correct. And that's specifically because of what the Texas Insurance Commission did. So at this moment, Texas is the only one in this circuit that has banned discretionary clauses. There are 23 other states that have done so. And so this is an issue that other circuits have dealt with and ruled upon already. As we sit here today, the six- There's a preemption issue other circuits have dealt with, but that wasn't being urged by the defendant here. They were, as I understand it, they were just accepting that the Texas statute would apply, but saying it doesn't change the ERISA standard of review. That's correct, Your Honor. And I think that brings us to an important issue because none of the parties briefed the preemption issue. And you're right that Humana consented to de novo review when we brought the motion to determine the standard review to the district court. The real question then becomes, what do you look to first? Do you first look to the state law, determine if it's preempted by ERISA or not, and then if it's not preempted, apply the state law? Or do you look to the state law or not look to the state law and instead just look to Federal common law? And what the other circuits have done, and as at least several of you have done in reviewing ERISA preemption issues in the past, is you look to the ERISA statute. You determine whether or not it preempts the state law, which ERISA has a very wide preemption clause. But in laws that apply to insurance, there's a savings clause. And so if it is saved from Federal preemption, the state law applies. And the effect of that is if the state law applies, the state law applies. There's no application of Federal common law. There's no application of Pierre or anything of that sort. Why would I be wrong in thinking the two coexist? They just address different issues, in that the plan in Texas can't have the discretionary clause. But we, whether the Supreme Court ultimately decides to split against us, presently we do, as to fact matters, tell courts that they defer. Why don't the two coexist? Because state law has filled in the blanks on the scope of de novo review. And it is permitted to do so under this preemption analysis if it meets the two prongs of the Miller test. So the whole thing turns on whether the state law just says, as was found below, that you can't have a discretionary clause. You read that out of the contract under Texas law. Or if it, beyond that, says, and you don't just read it out, but you have to then review factual findings de novo. Yes and no. If the Texas law applies and bans discretionary clauses, de novo review is the standard. And that's undisputed. The issue is, what does de novo review mean? In the Federal common law in our circuit, you still distinguish between facts and law. And my argument, and the state law, the way it's written, is you do not distinguish between facts and law. De novo review is on the facts and on legal issues as well. Does your position require us to go contrary to our case law and look at things anew and ignore a case law? Are we obligated to follow our case? Or is there a distinction between Pierre and what you're? That is a good question, Your Honor. And I'm not asking the court. I don't think it's necessary to explicitly overturn Pierre. And the reason for that is the state has spoken on this issue. The state has provided clarification and what was good for 25 or 26 years in the Fifth Circuit has changed. And so to that extent, state law has filled in the blanks on what exactly the scope of de novo review is. We've reiterated Pierre several times. I can tell you know every one of these cases, Dutka and a couple of other times, post-Glenn. Correct, Your Honor. And there's even a northern district opinion in Texas where I believe the plaintiff argued that Glenn changed this issue, that Glenn somehow changed the standard of what de novo review meant. And that issue was argued in that case. But this is a slightly different issue, which is what does the Texas law do? And our position is that Texas law, in and of itself, changes the scope of de novo review since it's saved from preemption. It can address, even indirectly, ERISA plans. It can affect Texas insurance policies. It can affect plans, so long as they're not self-insured. And they can still fall within this scope. And the reason this is important is there may be a question that how do we know that the Texas Insurance Commission actually intended this to at least partially apply to ERISA plans? In our opening brief on page 20, we cited to the TDI website, and it's tdi.texas.gov slash rules slash 2010. It's found on page 20 of our opening brief. It's also in our reply brief. I don't have a specific site for that reply brief page. But when you go to that website, there's a 21-page document from the Texas Department of Insurance. And in the introduction, there's a few pages describing the purpose of discretionary clauses and why they're being banned in the state of Texas. And on page three, there's a short discussion of ERISA. It says the use of a discretionary clause by an insurer in a coverage determination governed by ERISA has the effect of changing the appellate standard of review from de novo to arbitrary and capricious. A de novo standard of review allows for a full independent examination of factual controversies, whereas an arbitrary and capricious appellate standard of review is a less detailed and more deferential review. And here's the most important sentence. The department's position is that a full review by an independent decision-making body is necessary because of the potential conflict of interest by the insurer in making the coverage determination. It's very clear that the intent here is complete and full de novo review on factual issues and legal issues. And this is not something that the Pierre Court dealt with 25 years ago, because not many courts... I understand your argument on the Texas law, and maybe that'll carry the day, but it seems to me your more direct problem is with Pierre. Isn't an easier way to deal with what you see as the problem in the law either to get our court to reconsider Pierre or to get the Supreme Court to grant cert, which I'm surprised... Have there been cert petitions given how lopsided the split is? I know there was a cert petition in Pierre. Right, but the split wasn't so pronounced then. It was not. Has there been anything that you know of recently? There may have been, I'm not familiar with it, but I do know that this court has repeatedly, and I think even several times post-Glenn, declined to revisit the Pierre issue. Our backup position certainly is that if the court is interested in revisiting Pierre, it should do so, because as the years have demonstrated and as the other circuits have demonstrated and disagreed, this split is so pronounced now that you have eight circuits explicitly disagreeing with Pierre, and the first circuit just defining de novo review in a broad way, such that you can almost read it like... It wouldn't matter much until very recently, and now insurers would be very grateful for the Pierre decision. So the split's got more bite to it, somewhat recently. Well, I would... There was a cert op in DUDCA. Correct, correct. Baker and Botts, but at that point, there isn't so much pressure to resolve the split. Now, with these anti-discretionary laws, you happen to have Fifth Circuit and Texas only as unfavorable to insurers. Am I right? That is correct, Your Honor, and the reason that's also important is it comes into play in an odd scenario, which is already starting, and that is in a July opinion of last year out of Maine, a Maine district court applied the Texas discretionary clause ban and said de novo review means, and there's a quote from that particular court, that... I must independently weigh the facts and opinions in the administrative record to determine if the claimant met his burden. So in Maine, the Texas discretionary clause ban means that you weigh the facts and opinions under de novo review. Is that in the briefs that case was, do we know if the Pierre was presented to that district court? That is in the briefs, Your Honor. It's in both our opening and reply brief. A little time, I just did what, if you were to prevail and it is de novo review, would it be a remand? Yes, it would, and that's because this district court clearly applied the Pierre standard by deferring to an abusive discretion on the factual issues. And she repeatedly referenced that in the last few pages as she analyzed the factual issues. I think remand would be appropriate in that scenario. What about the actual merits? If we get to it, I mean, why was this a wrong decision by the plan administrator? Why should the benefits have continued? Your Honor, if you'd like me to address it in rebuttal, I'd be happy to, but that particular portion of the briefs are under seal. We've redacted those portions because of the sensitive health information. It's an eating disorder case. It involves suicidal attempts and some very specific allegations about someone who was a minor at the time. But isn't the party's name anonymized? It is. I was surprised the briefs were sealed, given there's an important privacy interest, but it's an anonymous party. That's correct, and in the district court, we've sealed the summary judgment and the entire administrative record. We just redacted it in this scenario. But to answer your question briefly, there's a period of about two to three months from June to September, which is the period of benefits that are at stake in this case, where she still had suicidal tendencies, she still threatened to cut herself, and there were other incidents where she, for instance, tried to throw herself down a hill, where her mental health was in a situation where she still required full-time care at this health facility. Well, I mean, I guess the issue is, what is medically necessary? And did the plan administrator somehow abuse his discretion or use the wrong standard for deciding what is medically necessary? Could we have to go into facts, or did he use the right standard, just the wrong facts, or where are we on that? Well, there are two disputes. The first is that we believe the wrong standards were used. They used the different guidelines, rather than the American Psychiatric Association guidelines, so we believe that they were not the proper peer-reviewed guidelines being followed. But regardless of that, we also believe that a review of the factual and the review of the merits of the case show that her treatment was medically necessary in that time. Thank you. Mr. Volterro? May it please the court, counsel, Carlos Volterro for Human Health Plans of Texas. The district court opinion by Judge Rosenthal is very well-reasoned, completely follows the law in this circuit. I don't think there seems to be much of a dispute about that. There are some parts of it I wanted to highlight, and then also reference a 2014 case from this circuit directing district judges on this very issue of the standard in ERISA cases. Specifically, Judge Rosenthal did a very thorough review. I'll go to that one. That case is McCorkle v. Metropolitan Life Insurance Company, 757 F. 3rd, 452, 2014. And at head note two, as recently as 2014, this is what this circuit wrote. It apparently bears repeating here that district courts hearing complaints from disappointed ERISA plan members or their beneficiaries for the administrative denial of benefits are not sitting, as they usually are, as courts of first impression. Rather, they are serving in an appellate role. And their latitude in that capacity is very narrowly restricted by ERISA and its regulations as interpreted by the courts of appeals and the Supreme Court, including the oft-repeated admonition to affirm the determination of the plan unless it is arbitrary or not supported. The court then wrote, we had thought that by now this was understood and accepted by all district judges of the circuit. But as this case demonstrates that we were wrong, at least as to one of them, we try yet again to drive the message home. And I'm not. You're reading from your brief. That's the case you cited in your brief.  Is it a case you cited? I'm not sure we cited it, Judge. I'll double-check that, but. That's so, you heard the earlier case. It's very difficult for us to digest and opposing counsel to respond. Understood, Your Honor. And I agree. And I'd say that, as you know, Your Honor, as you know, after the briefs are all submitted, you continue to prepare for the argument and look at things. And so sometimes things don't make it into the brief. But, and I wasn't citing that to pick on any of the judge at issue, of course. I'm only emphasizing how strong the case law has been in the circuit for 25 years and how Judge Rosenthal's opinion in particular, and that's where I started, is so careful at going through the facts of the record, the correct legal standard, addressing the fact that there'd been two board-certified psychiatrists who conducted reviews as to the disputed time period. One, Dr. Prabhu, worked for LifeSync. The other one, Dr. Neil Hartman, works for Advanced Medical Reviews. Just jumping to that, I know it's in the weeds of the decision, but those two seem to conclude she was stable, but wouldn't that medical finding have presumed stable in the context that she was in, meaning at Avalon? Or do they explicitly say she's stable and doesn't need the structure that Avalon gives her? Well, Judge, let me answer that this way. I understand what you're saying. I think if you look, Your Honor, at specific aspects of the record in particular, and I direct the court to record on appeal 599, as well as 639 through 40, what you see is, and 599 is the last part, beginning on 596, of the notes of the first doctor who conducted a peer-to-peer review. In other words, he is speaking with the person who was treating at Avalon Hills and getting the feedback. Is this Rob Hu? Yes, Your Honor. And so he very, I mean, it's very detailed, what they go over, the conditions, what's been happening, where things are at. And if you go to the last page, the first one I referenced, 599 in the record, they say, the final decision to proceed with the requested services between the provider and the member, based on the clinical information provided, the member did not meet the Mahalik PMA, medical necessity criteria for admission. Patient was not reported as being an imminent danger to self or others. Patient was not aggressive or threatening. There was no report of psychosis or mania. There was no report of medical instability. No new issues were reported. And she was also not cooperating with the treatment. Are the Mahalik criteria used anywhere else? I couldn't find anywhere in Westlaw reference to them. Judge, it's one of the standards that's used to evaluate mental health issues by physicians in this area. In this area? Yes. But isn't the policy itself, though, define what is a medical necessity? So wouldn't you go to the standards that are set up in the policy, rather than going to this Mahalik standard that was not included in the policy? Why didn't we just follow what was in the policy as the definition of what is a medical necessity and go to this other Mahalik standard? Doesn't that contradict what's supposed to happen? This is what the policy says is a medical necessity. Let's go by what the policy says, rather than going to some Mahalik standard? Your Honor is exactly right in that medical necessity is defined in the policy and that's where you go first. And that's what was done here in the first instance. That's what they went to. But you can imagine that there's some people who think that policies are already kind of too long and contain too dense information. If you were to have every single diagnosis or sickness or illness for every single condition outlined as what every criteria is for each possible condition for every person, it would be an extremely voluminous set. So you have a definition of medical necessity which references what is peer-reviewed, what is used by physicians in that specialty. And then the Mahalik group is one of those that is used in particular for behavioral and mental health issues. And so- Specialized guidance as to necessity given whatever ailment the person has. Mahalik then gives you your little grid and it's guidance. Correct, Your Honor. And while one of their arguments of the appellant is, well, you shouldn't have relied on that. But then they say, because you should stick to the policy. But then they say, oh, but you should have used this other standard that we like, the American Psychiatric Association. And that's a very, obviously, inconsistent. I mean, if you say you should only use what's in the policy, you can't advocate this other. This is the one that's used. It's peer-reviewed, it's standard. And so that's what was used. And, you know, if you go- Does it contradict, do these standards contradict each other or, I mean, what's in the policy is consistent with what's the Mahalik standard? Or is there one is not as strong as the other? Is there a difference between the different standards of what is a medical necessity? I don't believe there's any conflict between the policy and the Mahalik standard. I have not compared the American Psychiatric or other standards with Mahalik. But there's no inconsistency. Obviously, the policy would govern first. But to the extent that there's further interpretive as to specific conditions, illnesses, diseases, you go to a reference like this that doctors would rely on. Also, along the same lines of what we're discussing, the second part of the record that I was referencing. So you have the first board-certified psychiatrist from LifeSync who looks at her condition. Then they appeal that. They say, we disagree, we appeal. And then there's a second review that's conducted by Dr. Hartman, who is with Advanced Medical Reviews. He also conducts a peer-to-peer review. So now, and this is important because unlike a situation where it's just the doctors for the company that are looking at things, this is actually advocacy that's happening by the provider who wants to get paid as to the services being provided. So there's a dialogue between the reviewer and the peer. And they come up with the second report, which begins at 639 and goes through 640. And again, he goes item by item and shows how the criteria is not met for medical necessity. So what I think is, in part, the issue in this case, it doesn't matter what standard would have been applied. Medical necessity was not, it was a proper determination as to medical necessity. Did Judge Rosenthal say that, though? She applied our law, therefore she gave deference to the factual conclusions. She did not, but she did mention that that was one of our arguments before her at the district court level. And I would say that because of what this circuit has written before and the nature of an ERISA appeal, it is a cold record. And so the de novo factual abuse and discretion is a little bit of a solution without a problem to some extent. Because at the end of the day, plan interpretation is de novo regardless. And that's where the discretionary clauses are at issue. And that's why we took it out of the case. We said, look, we'll just consent to de novo review as to the plan interpretation, because that takes care of the discretionary ban clause. And so as to factual determinations, the three of you are in as good a position as Judge Rosenthal to make a new factual determination because of the nature of the appeal. In other words, what are we going to do at the district court level? Is there going to be additional discovery? Are there going to be witnesses that are going to be coming in? That's not going to happen. It's going to be a review of the administrative record. In ERISA cases, there are basically three rounds of additional discovery that could be available, none of which would be relevant or change the outcome in any way here. So in the other circuits that don't follow PEIR, they're still limited to the record. It's just they're not given this abuse of discretion on factual questions? I had that same question. So we went and researched that issue before coming here. And it appears that that's true, that other circuits, the 11th circuit seems to be a little bit of an outlier in terms of how much additional record gets built. But it seems that in the other circuits, there doesn't seem to be that much additional information anyway. Which would, well, OK. I mean, PEIR says, oh, it's going to be such a problem to not apply abuse of discretion to fact findings. But if it's limited to the record, maybe it hasn't proven in all these circuits to be that burdensome. But I mean, PEIR's binding on us, so we don't have to get into all that. And Judge PEIR is consistent with Rule 52a and with typical fact. Like, it's not a very difficult, I think, conceptual argument for us that things like contract interpretation and issues of law are always de novo and for the court. I mean, what the? When an appellate court's reviewing a judge who's independent. I mean, that's the argument other circuits are using, that in the ERISA context, you're not dealing with an independent judge. You're dealing with a plan. So, but again, we. And that's a point, Judge, but I would say, and that's why the whole notion of, well, conflict of interest and all that, if it's de novo, shouldn't be relevant. Because at the end of the day, you're trying to figure out is it right or wrong, as opposed to was the administrator corrupt or biased or not really applying things the proper way. And here, Judge Rosenthal mentioned that there's no record of Humana systematically misapplying benefits. And so she went through the conflict of interest analysis pretty detailed in her opinion as well, which would be relevant to an abusive discretion standard, but not to de novo standard, and found that the safeguards had been put in place to minimize that factor. And with that. Well, I guess there are a few other. What's your thought on the fact Pierre came out early and it hasn't been persuasive to any other circuit? You think it's because of distinction without much of a difference? Or you just think we're right, they're wrong, but they're all wrong? I hate to try to put myself in the shoes of what. Because if the split is sharpening insignificance in light of this Texas law, and therefore it actually does make a little bit of a difference now, maybe not much as you're saying, but it does, I would think this issue will get pressed to our full court or to the Supreme Court. And therefore, I'm just asking you whether you think the validity, now that you can see all the other circuit's reasoning, if you think the validity of Pierre is sound. Pierre is very sound. I don't necessarily agree that the split is sharpening, because I think that. Significance of the split? I don't think so. Because I think at the end of the day, I don't think it's that significant. I think that we have. It's more significant because these states, Texas has this discretionary clause. So Pierre didn't matter when people were able to put discretionary clauses in, right? Because Pierre didn't provide the standard. The discretionary clause was the source of the deference to the fact finder. If these are not preempted, if Texas's law is not preempted, well, then Pierre is going to control in a lot more cases. But even under that law, the plan interpretation would be de novo, I think. Oh, you're saying in the other two states that don't have the discretionary clauses. No, I guess what I'm saying is Pierre didn't actually, Pierre, as I understand, says when there's no discretionary clause, you still give this deference to the fact finding. Yes. But Pierre didn't even come up all that often, because so many of these plans had discretionary clauses. Now Texas is saying you can't have those discretionary clauses, so it's not the discretionary clause, but Pierre is usually providing the source of the deference to the factual findings. I think that's why he's saying it's, but Pierre is more, is having more effect now. I just don't, I'm not sure in fact it's having more of an effect. I don't think in practice it does. OK, maybe just because you have a little more time, of course, opposing counsel is not saying that we have to adjust Pierre, nor really pressing, at least orally, that Glenn has sort of moved the ball as to Pierre either. They're saying just that Texas law controls on the deference a court would give directly. And obviously we disagree on that, because we think if you read the Texas law and the statute. Well, the portion that he read to us. Well, he started reading from the administrative interpretive part of the website. The actual statute and the actual regulation doesn't talk about factual findings. It talks about planned interpretation. And the cases they cite from Maine and from, and Judge Ferguson's case that they also refer to, those are planned interpretation cases. Those would be the ones that the discretionary clause would apply to in terms of the planned interpretation, not the factual review, which is. So bright, easy line in your mind, law keeps it out of the plan, speaks nothing to courts about levels of deference. Exactly right. Very well summarized. And the big issue is, was Pierre right? And I think everybody acknowledges it would be an en banc issue. I think they put that in their brief. I've heard some mention of that. But it was right. And I think if it goes to the US Supreme Court, I would hope we would be able to convince that the Fifth Circuit is right and not the other circuits. Because it's consistent with what the court wrote in Firestone. It is consistent with contract law and the standards we apply in other areas. It's consistent with trust law. And if you're thinking about what ERISA is, in part, is you are deferring to a frontline decision-maker, in this case, physicians, who are making these decisions. And why, with all respect to the federal judiciary, would a district judge or an appellate panel be in a better position to review facts de novo than just review for an abuse of discretion to make sure that there hasn't been something done inappropriately? And this circuit has previously found that some plan administrators have abused their discretion, specifically with regards to a non-Texas case involving plan interpretation. And so I think there are judicial safeguards in place. And we don't have to go to a full Article III standard trial in cases like we do in other cases in the context of ERISA. Unless the panel has any other further questions, I will yield the rest of my time. And thank you for your attention. This case gives us a good example why the de novo review standard is so important. If Humana is allowed to put in their policy the definition of medical necessity and then not rely on it, there is no way to review that decision unless a court determines that it was an abuse of discretion to use a different standard. In this case, Humana used a Mihelic criteria, which was something outside the policy, not explained in the policy, and not provided during the claims and appeals process. As we said earlier, one of the arguments we made is that the American psychiatric guidelines should be the proper standard of peer review for these types of cases. But this outlines the fact that if the policy says one thing, companies like Humana can still go outside the policy and rely on some other criteria that are not explained to the claimant until somewhere down the road when it's too late for them to review. What's your best example on how the Mihelic criteria differ? Rather than just because a plan administrator can give guidance to its claims adjudicators, just sort of this is more particular to this ailment, use that. So how is it that the Mihelic, I think you'd have to establish that the criteria in there are inconsistent with the right? Well, either that they're inconsistent, or there's something that's just additional that wasn't in the plan or policy. The policy has a six-factor definition for medical necessity. The Mihelic criteria, I think, are eight. And one of the issues with them, and our briefing explains a little bit more about the issues with the Mihelic criteria. But in the interest of making sure all issues were covered,  as the medical necessity. If you could give me a fact that's relevant under the Mihelic criteria that wouldn't be relevant under the plan. Does that come to mind easily or not? It does not, Your Honor. I know the record would speak to that a lot better than I would. But I think one of the other issues, there was a short discussion about is Pierre still good law? Are the underpinnings behind it sound? And the reason I say no are two. The first reason that Pierre gave for not deferring to factual determinations is this idea of a cold record. But as we now see in the last 25 years, other circuits, other district courts around the country review factual decisions de novo. And that particularly in these 24 states, in the 6th, 7th, and 9th circuits where the circuit courts have found that the state discretionary clause bans are not preempted, de novo review means that those courts and those circuits are reviewing factual issues de novo. So the idea that this is a cold record and we need to defer to the plan administrator is one that as time has gone on has proven to be incorrect. The second is that this would lead to a flood of litigation. And that just hasn't proven out to be the case either. In fact, the plan administrator should now have an increased incentive to make sure to carefully review the claim. Because if they understand that de novo review on factual and legal decisions is the end result in a court of law, they'll be more motivated to understand exactly what they're doing and not rely on all kinds of different criteria. And finally, the reason why that main case was important, and this is because of a case that came out in the last 10 days, there's a case out of the Southern District of Texas called Garza v. United Health, United Health Care. And that district case is H-160853. The opinion was written on January 31st of this year. In that particular case, it directly addressed the Texas discretionary ban, the scope of de novo review, the exact issues that are in front of this court. And it went through a discussion of the Texas statute, the Texas description, it went through Pierre, and then it just deferred to Pierre. It didn't discuss what the Texas statutory language actually said. So it is, what we now have is a scenario where a Texas resident is getting less protection under the Texas discretionary clause ban than a resident in Maine under the same Texas discretionary clause ban. The state law being the exact same, it is now the circuit law that has changed the way the coverage and the way the rights are being promulgated to these various residents. And to return to the statutory language of the Texas law, I read earlier from what was the introduction and the reasoning behind it. But the definition of a discretionary clause in Texas covers adverse claims decisions or policy interpretations. A policy interpretation has to be a contract interpretation. And an adverse claim decision has to be based on facts because insurance companies are supposed to decide claims on the facts. So an adverse claims decision has to be a factual decision. So whether it's a factual decision or a legal decision, Texas is clearly saying those are discretionary clauses and those are banned. Thank you for your time. Thank you. That concludes oral arguments for today and court will be in recess till nine o'clock tomorrow morning. Thank you.